6836

BURNETT v. POSTAL TELEGRAPH-CABLE CO.

1. CONDEMNATION—NONSUIT.—Where it is doubtful if a telegraph company is a domestic or foreign corporation, it is improper to grant nonsuit on ground that condemnation is landowner's remedy for location of line.

2. IBID.—IBID.—TELEGRAPH COMPANY.—But if defendant is treated as a domestic corporation, nonsuit was improper here, as condemnation only applies where entry is by permission, while here the permit was not put in evidence and the parol evidence tends to show defendant agreed to locate its line at a different place than where located, and the evidence as to paying damages is susceptible of the inference that the damages demanded and promised were for entry at a place agreed on and not the place actually occupied.

Before PURDY, J., Spartanburg, May, 1907. Reversed.

Action by W. W. Burnett against Postal Telegraph-Cable Company. From order of nonsuit, plaintiff appeals.

*Mr. Stanyarne Wilson,* for appellant, cites: *Defendant had no right to go through land of plaintiff without permission:* 76 S. C., 98. *Defendant could not go through at any place under permission to go at a particular place:* 71 S. C., 148; *Baldwin* v. *Tel. Co.,* 78 S. C.; *Voyles* v. *Tel. Co.,* 78 S. C. *Condemnation only applies when entry was by permission:* 69 S. C., 485. *Meaning of "permit:"* 47 S. C., 483.

*Messrs Geo. H. Fearons* and *John Gary Evans,* contra. *Mr. Evans* cites: *Permit did not say where line was to be located, and entry thereunder anywhere is not a trespass:* 70 S. C., 530; 71 S. C., 153; 74 S. C., 558; 21 S. C., 430; 58 S. C., 544; 15 S. C., 477; 21 S. C., 423; 62 S. C., 52.

April 1, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff brought this action against defendant to recover damages for trespass upon his

lands near Duncan's, in Spartanburg County, by erecting its telegraph lines across the same in reckless and wanton disregard of plaintiff's right. Defendant, by its answer, alleged that it entered for the purpose of constructing its lines with the permission of plaintiff and after compensation therefor, and that more than twelve months had elapsed since said construction, and plaintiff had not petitioned for an assessment of damages under the condemnation statute. At the close of plaintiff's testimony the Court granted defendant's motion for a nonsuit on the ground that it appeared from the testimony that defendant's entry upon the lands of plaintiff was by his permission, expressed or implied, and that plaintiff's remedy is under the condemnation statutes.

The appeal questions the correctness of this ruling. We are of the opinion that the nonsuit was improper. In the first place, it does not clearly appear that the condemnation statute applies to this case. The complaint alleged that defendant is a corporation duly chartered for the purpose, among other things, of carrying on the business of telegraphic communication between the cities of Spartanburg and Greenville and other points, which allegation was denied in the answer and no proof was offered whatever to show whether defendant was a domestic or foreign corporation. If defendant is a foreign corporation condemnation statutes do not apply. *Duke* v. *Postal Telegraph Co.,* 71 S. C., 95, 50 S. E., 675; *Baldwin* v. *Postal Telegraph Co.,* 78 S. C., 422. In each of these cases an admission appeared in the record that the defendant therein, probable the same corporation as in this case, was a foreign corporation. In this condition of uncertainty it would be improper to rest a nonsuit on the ground that plaintiff's remedy was under the condemnation statutes.

But even if defendant must be treated as a domestic corporation, authorized to proceed under the condemnation statutes, the nonsuit was improper. The nonsuit rests upon

. the theory that defendant entered and constructed its lines where it did with the permission of plaintiff.

That is not the only inference of which the testimony is susceptible. While defendant, on cross-examination of plaintiff, proved that he executed a certain written permit, yet defendant did not see fit to introduce the instrument in evidence. Concerning this Judge Purdy said: "It is undisputed that plaintiff gave defendant a right to enter upon the land, because that comes from the agreement. Mr. Evans (counsel for defendant) read the contract, and while it was not put in evidence, the full terms of the contract were brought before the Court and jury and the concluding part of that paper says damages are to be paid for injury done to growing crops and timber cut."

The instrument in question not being before the Court we can not say that plaintiff gave defendant permission to construct its lines upon, over and across defendant's land whereever it may choose to locate it. On the contrary, the only testimony on that subject is by the plaintiff, who testified most positively that he only gave permission to defendant to construct its line over his land *along the dirt road.* It appears that plaintiff's dwelling fronts upon the public road between Spartanburg and Greenville, that the railroad runs between his house and the dirt road, that defendant erected its lines between plaintiff's house and the railroad, that the line as located by defendant went through plaintiff's wheat field and through some pine woods, that he sustained injury not only to his wheat but also in the cutting of his timber and to his land in driving over his terraces.

In answer to the question as to what took place between him and defendant's agent when he signed the paper referred to, the plaintiff testified:

"A. He told me they wanted to run around the dirt road, and if I would sign a paper, told me that all the men from Greers to my home had signed it; he had gotten permission to go through all the land, and unless I consented he would force me and go and would not pay me any damages—that

is about the conversation. He said he would not pay if I would not sign it, and they would force it through anyhow, and I just read a few words on the paper and he tore off one and I signed it. Q. What did he tell you as to where he was going? A. Told me they would go on the dirt road. I told him I would not sign a paper on this side of the railroad, for five hundred dollars for them to go through. I told him, being that I had signed for one man I would sign for him to go on the dirt road. Q. You would not let him go on your side of the railroad for five hundred dollars? A. Yes, sir; and he said he would force the line anywhere they wanted if I did not sign it. Q. If you did sign it, where would it go? A. Go on the dirt road, if I signed the paper. Q. That is the only permission you gave? A. Yes, sir. Q. Did you ever give any permission to go anywhere else? A. No, sir. Q. You say, when you saw them there you said you were going to make them pay damages? A. Yes, sir. Q. You are trying to make them pay damages in this suit? A. Yes, sir. Q. Did you ever consent for them to go where they did go? A. No, sir, never did. They come in there, but I never consented for it. Q. They told you they could go wherever they wanted to? A. Yes, sir. Q. You said you would make them pay for it? A. Yes, sir."

In the absence of a valid writing to the contrary, it is inferable from the testimony that the only permission given was the right to construct along the dirt road and that defendant in violation of the permit constructed elsewhere. If so, such entry was not by permission but constituted a trespass. The condemnation statutes apply when the entry is by permission and the acts done or sought to be done are incident to the right granted. *Granger* v. *Tel. Co.,* 70 S. C., 530, 50 S. E., 193.

But it is contended that after being aware that defendant was locating its line where it did, plaintiff made no protest but consented to such entry upon an agreement by defendant to pay damages. This is based upon the following testimony of plaintiff:

"Q. When did you first know that anybody had built a telegraph line across the field? A. Well, they went through before I knowed they were going through. There was a gentleman who came there and got leave to go through the dirt road. Q. You gave him leave? A. Yes, sir, on the dirt road. For that dirt road, I signed a paper for him to go on the dirt road, and he said he would not strike my land only now and then. Q. You gave him permission to go on the land? A. I signed a paper to that effect. Q. You signed a paper allowing him to go on the land? A. Yes, sir; to go next to the dirt road. Q. Did he pay you anything for it? A. No, sir; he gave me a dollar. * * *

"Q. You saw them raising the poles? A. Yes, sir. Q. Before they got them up? A. Yes, sir. Q. Did you say anything to them? A. Yes, sir. Q. When they were putting up the poles? A. Yes, sir. Q. You didn't object to their going through, did you? A. I told them they would have to pay me damages. Q. You didn't object to their going through? A. They were half through before I went to them. Q. When you got there you just told them they had to pay you damages? A. I told them my understanding— Q. They agreed to pay you? A. Said they would pay me damages. Q. You knew that? A. Yes, sir. Q. You said you wanted damages for going through? A. They agreed to pay damages. Q. They agreed to pay you damages for your crop and for the trees they cut down, and for going over there? A. They would not agree to pay anything. They didn't to me when I went to them. Q. You signed this paper—did you read it? A. No, sir, I never read it; I never had my specks. I was out in the field; he just read over a few lines. Q. You sign your name that good without your specks? A. Yes, sir. Q. Then you do not need specks much? A. That has been several years ago. Q. You signed that where? A. I signed it out in the field. Q. So you were perfectly willing. A. He read over to me something like that. I don't know whether he read it correct or not. Q. We agree to pay damages to crop and timber?

A. When I went to this man, one of them there said he would not pay me damages. Q. You told them you expected damages for going through there? A. Yes, sir."

A possible and reasonable view of this testimony is that when plaintiff said "they agreed to pay damages," he was referring to the written paper and agreement to construct along the dirt road in which the defendant agreed to pay damages to crops and timber, but that there was no agreement to pay damages with respect to the line adopted by defendant, but the defendant had entered without the knowledge of plaintiff and upon ascertaining that fact he informed them they would have to pay damages. This was not inconsistent with the present suit for damages.

There being some testimony tending to show that defendant trespassed upon plaintiff's land to his injury, it was error to grant a nonsuit.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.